### STATE v. CHARLIE LASSITER.

(Filed 19 February, 1930.)

**Intoxicating Liquor A a—Constitutional Law B a—State statutory provision making the purchase of intoxicating liquor unlawful is valid.**

The State in its inherent and reserved power preserved to it by the Tenth Amendment to the Federal Constitution may enact valid laws relating to prohibition when not in conflict with the Eighteenth Amendment to the Federal Constitution, or congressional legislation, and our State statute, 3 C. S., 3411(b), making the purchase of intoxicating liquor a criminal offense is valid and enforceable.

APPEAL by defendant from *Sinclair, J.,* at December Term, 1929, of CHOWAN.

Criminal prosecution tried upon an indictment charging the defendant with (1) transporting, (2) purchasing, (3) possessing, and (4) having in his possession for the purpose of sale intoxicating liquors, contrary to the statute in such cases made and provided and against the peace and dignity of the State.

It was shown on the trial that the officers found a quantity of liquor, less than a gallon, in the defendant's bedroom. The defendant admitted purchasing the liquor in question for his own use.

Verdict: "Guilty of purchasing liquor."

Judgment: Imprisonment in the county jail for 30 days and to pay a fine of $50 and the costs.

The defendant appeals, assigning error.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*L. E. Griffin for defendant.*

STACY, C. J. It is the position of the defendant that as the Volstead Act, 41 U. S. Statutes at Large, 305, does not prohibit the purchase of liquor and the Turlington Act, ch. 1, Public Laws 1923, was adopted

"to make the State law conform to the National law in relation to intoxicating liquor" under the "concurrent power" clause of the Eighteenth Amendment, the State was, therefore, at the time of the enactment of the local statute, limited in its power to legislate more stringently on the subject than the Congress had done.

A similar argument was advanced in the case of *U. S. v. Lanza,* 260 U. S., 377, and answered by *Mr. Chief Justice Taft,* speaking for the Supreme Court of the United States, as follows:

"The Amendment was adopted for the purpose of establishing prohibition as a national policy reaching every part of the United States and affecting transactions which are essentially local or intrastate, as well as those pertaining to interstate or foreign commerce. The second section means that power to take legislative measures to make the policy effective shall exist in Congress in respect of the territorial limits of the United States and at the same time the like power of the several States within their territorial limits shall not cease to exist. Each State, as also Congress, may exercise an independent judgment in selecting and shaping measures to enforce prohibition. Such as are adopted by Congress become laws of the United States and such as are adopted by a State become laws of that State. They may vary in many particulars, including the penalties prescribed, but this is an inseparable incident of independent legislative action in distinct jurisdictions.

"To regard the Amendment as the source of the power of the States to adopt and enforce prohibition measures is to take a partial and erroneous view of the matter. Save for some restrictions arising out of the Federal Constitution, chiefly the commerce clause, each State possessed that power in full measure prior to the Amendment, and the probable purpose of declaring a concurrent power to be in the States was to negative any possible inference that in vesting the National Government with the power of country-wide prohibition, State power would be excluded. In effect the second section of the Eighteenth Amendment put an end to restrictions upon the State's power arising out of the Federal Constitution and left her free to enact prohibition laws applying to all transactions within her limits. To be sure, the first section of the Amendment took from the States all power to authorize acts falling within its prohibition, but it did not cut down or displace prior State laws not inconsistent with it. Such laws derive their force, as do all new ones consistent with it, not from this Amendment, but from power originally belonging to the States, preserved to them by the Tenth Amendment, and now relieved from the restriction heretofore arising out of the Federal Constitution. This is the *ratio decidendi* of our decision in *Vigliotti v. Pennsylvania,* 258 U. S., 403.

"We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory. Each may, without interference by the other, enact laws to secure prohibition, with the limitation that no legislation can give validity to acts prohibited by the Amendment. Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other."

Speaking to the same subject in *S. v. Hammond,* 188 N. C., 602, 125 S. E., 402, *Hoke, C. J.,* delivering the opinion of the Court, said:

"Again, it is held that the power of a State to enact statutes in regulation of the manufacture, sale and disposition of intoxicating liquors is not rested alone or dependent upon the Eighteenth Amendment to the Federal Constitution, the Prohibition Amendment, but by virtue of its sovereignty and in the reasonable exercise of its police powers, the State may if it sees proper establish more stringent regulations on this subject than are contemplated by the amendment referred to, with the limitation that the State may not authorize or sanction that which the National Amendment prohibits, and that if, in case of concurrent legislation as therein authorized, designed to enforce the amendment, there is conflict between the Federal and State law, the provisions of the Federal statute shall prevail. *S. v. Harrison,* 184 N. C., p. 762; *S. v. Barksdale,* 181 N. C., p. 621; *S. v. Fore,* 180 N. C., p. 744; *Rhode Island v. Palmer,* 253 U. S., p. 350."

It results, therefore, if we assume the law to be, as it has been defined, "the highest expression obtainable, at any given time, of the people's conception of the correct rule of conduct," that, as now expressed in the valid statutes of this State, it is unlawful to purchase, at any time or place in North Carolina, any quantity of intoxicating liquors for beverage purposes. *S. v. Winston,* 194 N. C., 243, 139 S. E., 240. The same statute which makes it unlawful for any person to sell any intoxicating liquor as a beverage also makes it unlawful for any person to purchase it for such purpose. The seller and the purchaser are declared equally liable under the law. *S. v. Hickey, ante,* 45, 150 S. E., 615.

It is the avowed will of a majority of the people of this commonwealth that the use of intoxicating liquor as a beverage shall be prevented, and so the statute provides that it shall be unlawful to sell it or to purchase it for such purpose. The right of the State so to legislate, without infringement of the Federal law, is undoubted. Such was its right before the adoption of the Eighteenth Amendment and the passage of the Volstead Act, and such right is still preserved to it under the Tenth Amendment to the Constitution of the United States. *S. v. Harrison, supra.*

No error.